900 So.2d 77 (2005)
STATE of Louisiana in the Interest of T.S.
No. 04-KA-1111.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*78 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Desirée M. Valenti, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Timon V. Webre, Indigent Defender Board, Harvey, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant, T.S., appeals her sentence in Juvenile Court for the Parish of Jefferson.
On April 27, 2004, the State filed a petition charging T.S. with simple battery ("EE" charge), in violation of LSA-R.S. 14:35. A subsequent petition was filed on May 24, 2004, charging T.S. with two counts of forgery ("GG" and "HH" charges), in violation of LSA-R.S. 14:72(A) and 14:72(B). Following a hearing, T.S. was adjudicated delinquent of simple battery on June 2, 2004. However, on June 23, 2004, the State amended the "GG" and "HH" charges of the petition to two counts of attempted theft valued between $300 and $500 in violation of LSA-R.S. 14:27; 14:67. T.S. entered an admission to the theft charges.
At the disposition hearing on August 5, 2004, T.S. was committed to the Department of Public Safety and Corrections, Office of Youth Development for a period of six months on the simple battery charge ("EE" charge) and a period of one year on each attempted theft charge ("GG" and "HH" charges), to run concurrently. At the disposition, counsel for T.S. gave notice of his intent to appeal and moved for her to remain in her mother's custody awaiting the appeal. The court granted this request, and this timely appeal follows.
On April 21, 2004, K. M., T. S.'s mother, called the sheriff's office after she was struck by her daughter. She testified that T.S became upset after she told her friend, B.C., to leave and commented to T.S. that she did not want the friend in her house. According to K. M., T.S. was out of control, and broke the cordless phone by slamming it onto the ground. T.S. threatened to cause damage to their home and to her car, and repeatedly struck her in the arm, nudged her leg and stepped on her foot. The mother claimed she never struck T.S. K.M.'s boyfriend had to restrain T.S., at which time T.S. tried to hit him. After that, the police were called.
In court, T.S. claimed she became upset because her mother was cursing at her friend, arguing with her friend's grandmother and threatening to call the police. She admitted to hitting her mother a couple of times. Although she stated that her mother hit her too, she acknowledged that she struck her mother first. The court decided T.S. had committed a simple battery and, thereafter, the child and mother argued amongst themselves in the courtroom. K.M. indicated that although T.S. was under "house arrest", she left the house after the family went to sleep. She stated that T.S. threatened to "beat the hell out of me when we get home," and declared that the child needed to go to jail *79 or to a facility. After continued argument, T.S. was ordered to go to Rivarde Detention Home for continued custody pending disposition.
On June 23, 2004, T.S. pled guilty to the attempted theft charges after stealing checks from Mark Foret, her mother's boyfriend, filling the checks out for an amount within $500, and trying unsuccessfully to cash them.
The disposition hearing was held on August 5, 2004. The probation report read by the trial court recommended that T.S. be sentenced to the Department of Public Safety and Corrections in order for her to be placed in a secure facility. The probation officer who prepared the report, Roberta Brown, testified that she had not interviewed the victims in this matter and was not aware that the victims did not want T.S. to go to jail. After the probation officer was made aware of the wishes of the victims and it was explained that, since being released from Rivarde, T.S. had no further violations or new arrests, Brown testified that these new facts would not change her mind. Brown supported her opinion by stating that T.S. had an extensive history with the juvenile system. Further, T.S's case was staffed with the Correctional Options Program and she was found not suitable due to her mother's inability to work with the Department of Juvenile Services.
K.M. testified as the victim to the simple battery charge, and stated that she and her daughter have had their problems in the past; however, T.S. had been home for over a month and although they had a few typical teenage problems, there had been no physical confrontations. K.M. believed she had gotten to the "stem" of some of the problems and discovered things that T.S.'s therapist and probation officers knew and about which she was not previously informed. She further testified that her daughter no longer associated with the friend she had gotten into trouble with. She stressed that she did not want to see her child go to jail over the incident, and stated that she does cooperate with the department, but does "butt heads" with them. She often visited T.S. and went to all meetings. K.M became upset at the disposition hearing and was threatened several times with contempt.
Mark Foret, the victim of the attempted theft charges, likewise testified that he did not want T.S. to be incarcerated.
The court committed T.S. to the custody of the Department of Public Safety Corrections, Office of Youth Development, for a period of six months on the simple battery charge ("EE" charge) and a period of one year on each attempted theft charge ("GG" and "HH" charges), to run concurrently.
On appeal, T.S. contends that the trial court erred in committing her to six months concurrent with one year to the Department of Corrections, as the sentence was not the least restrictive alternative considering the circumstances of the case, the child's needs and the best interest of society, and such sentence was excessive.
Art. I, Sec. 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." Where excessive commitment is complained of in juvenile proceedings, the record must be reviewed to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child's needs, and the best interest of society.[1] Much discretion is granted *80 to the court in juvenile matters because of the special nature of the proceedings, but the court must balance the needs of the child with the best interest of society.[2]
In committing T.S. to the Department of Public Safety and Corrections, Office of Youth Development, the judge determined that to allow T.S. to remain in her home would be contrary to her welfare and not in her best interest. The judge further provided the following:
[S]ecure commitment would be in the child's best interest and in according to [sic] the evidence presented. The Court finds services were not offered in an attempt to prevent the commitment of this child due to the emergent nature of the placement and such lack of services was therefore, reasonable. Minor was released from LTI on January 8, 04, after serving three months. Minor committed two simple battery charges, one month later in which charges were dismissed. Minor committed a simple battery two months later and which [sic] she is currently awaiting disposition. In addition to these charges minor is, has plead [sic] guilty to the amendment of the forgery to theft on two charges. The E, the GG and HH charge. Minor continues to place herself at risk finding changing and (inaudible) aggressive behavior and showing no regard for authority. Court finds that reasonable efforts to make it possible for the child to return to her home shall be made include [sic], minor will cooperate will all recommendations of OYD, Correctional Facility until completion of, of the term. Mother will cooperate with all recommendations of her aftercare. Court will recommend that the juvenile be assigned a secure custody, regular CCY or Stop Light.
In considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal. The court should impose the least restrictive disposition authorized by Articles 897 through 900 of the Children's Code which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. La. Ch.C. art. 901(A) and (B). Paragraph (C) holds that commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists: (1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime; (2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment; (3) A lesser disposition will deprecate the seriousness of the child's delinquent act; (4) The delinquent act involved the illegal carrying, use, or possession of a firearm.
Factors (1)-(3) apply to the present case. The record shows that T.S. has an extensive history of delinquent behavior that neither suspension of disposition or probation has prevented, as documented in the report prepared by Roberta Brown. Attached to Brown's report was a report made by the Correctional Options Program on June 22, 2004. In that report, T.S.'s probation officer stated that she was not suitable for supervision by COP, finding that T.S. did not have a full understanding of her situation and the consequences for her actions, showing no remorse. The COP report indicated that T.S.'s mother blames others for her daughter's behavior, and became so disruptive *81 that she was asked to leave the department. Returning T.S. to her mother's custody has been ineffective and has not prevented subsequent delinquency in the past. During the disposition phase, the judge remarked that, after serving three months at LTI, T.S. was released and was subsequently charged with three simple battery charges which she committed within the next three months. In addition, T.S. admitted to attempted theft charges perpetrated while in her mother's custody. From the record, it appears that without removal from her present custodial environment at home, T.S. is unlikely to realize the seriousness of her delinquency and will likely continue to commit delinquent acts as demonstrated in the past.
La. Ch. C. art. 901(D) states that the following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of the disposition or probation:
(1) The child's delinquent conduct neither caused nor threatened serious harm.
(2) The child did not contemplate that his delinquent conduct would cause or threaten serious harm.
(3) The child acted under strong provocation.
(4) There were substantial grounds tending to excuse or justify the child's delinquent conduct, though failing to establish a defense.
(5) The victim of the child's delinquent conduct induced or facilitated its commission.
(6) The child or his family has compensated or will compensate the victim of the delinquent conduct for the damage or injury that the victim sustained.
(7) The child has no history of prior delinquency or has led a law-abiding life for a substantial period of time before the commission of the instant delinquent act.
(8) The child's delinquent conduct was the result of circumstances unlikely to recur.
(9) The character and attitudes of the child indicate that he is unlikely to commit another delinquent act or crime.
(10) The child is particularly likely to respond affirmatively to probationary treatment.
(11) The commitment of the child would entail excessive hardship to himself or his family.
T.S. argues that subsections (1), (3) and (11) apply. She urges that no one was permanently harmed, and that she was forgiven. In the simple battery case, she argues that she was provoked by her mother cursing her friend. Further, she suggests that the Children's Code does not provide for grounds for incarcerating a juvenile because the probation department does not want to work with the probationer's mother. Finally, T.S. sets forth how her commitment would entail undue hardship to her and her family since the family does not want her to be incarcerated, and because a message would be sent that parents should not call the police or juvenile court for help unless they want their child taken from them.
Nevertheless, it appears that the judge accorded greater weight to subsections (7) through (10), taking into consideration the juvenile's prior delinquency history and the likeliness of future delinquent conduct.
The report by the Office of Probation of the Department of Juvenile Services and the Office of Youth Development, which recommended that T.S. be committed to the Department of Public Safety and Corrections, was based on T.S.'s extensive legal history with the Department of Juvenile Services, her several out-of-home *82 placements, the failure of past interventions to stop criminal behavior, and T.S's incompatibility with the COPS Program. The court also heard testimony on T.S's behalf from her mother and her mother's boyfriend.
It is clear that the judge considered all the evidence presented at the disposition hearing and felt that commitment was appropriate. Given the testimony at the disposition hearing as well as the predisposition investigation report, and considering the judge's wide discretion afforded in juvenile matters, we find the disposition imposed was not excessive, and that it was the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the best interest of society.
This assignment of error is without merit.
This Court has determined that in juvenile cases, LSA-C.Cr.P. art. 920 mandates an error patent review whether or not defense counsel asked for it.[3] Our error patent review discloses that the trial judge failed to advise T.S. of the two-year prescriptive period for seeking post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8. Therefore, we remand the matter to the juvenile court and instruct the court to inform the juvenile of the delays for post-conviction relief in writing and file proof of the notice in the record.
Further, it appears that T.S. was not given credit for time served at Rivarde Detention Center from June 2, 2004 until June 23, 2004. LSA-Ch.C. art. 898(A) provides that "[t]he court shall give a child credit for time spent in secure detention prior to the imposition of disposition." Since this article is mandatory, T.S. is entitled to credit for time served.[4] We order that the disposition be amended to give T.S. credit for time served in secure detention prior to the disposition.
For the foregoing reasons, the disposition is affirmed as amended. The matter is remanded to the trial court in accordance with this opinion.
AFFIRMED AS AMENDED; REMANDED.
NOTES
[1] La. Ch. C. art. 901(B); State v. In The Interest of J.M., 96-801 (La.App. 5 Cir. 1/15/97), 687 So.2d 136, 139, writ denied, 97-734 (La.11/21/97), 703 So.2d 1298.
[2] Id.
[3] State ex rel. Z.S., 01-1099 (La.App. 5 Cir. 2/26/02), 811 So.2d 1003.
[4] See State v. In The Interest of J.M., supra.